IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
**BILLINGS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| and | ) |
| | ) |
| STATE OF MONTANA, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| BRIDGER PIPELINE LLC, | ) |
| | ) |
| Defendant. | ) |

Case No.  1:21-cv-00122-SPW-KLD

Judge

CONSENT DECREE

# TABLE OF CONTENTS

I.    JURISDICTION ..................................................................................................... 5

II.   PARTIES BOUND.................................................................................................. 5

III.  DEFINITIONS........................................................................................................ 6

IV.   GENERAL PROVISIONS .................................................................................... 9

V.    NATURAL RESOURCE DAMAGE PAYMENT BY DEFENDANT ................................ 10

VI.   TRUSTEES' MANAGEMENT AND APPLICATION OF THE SETTLEMENT .......... 12

VII.  STIPULATED PENALTIES ................................................................................ 13

VIII. COVENANTS NOT TO SUE BY PLAINTIFFS ................................................ 15

IX.   RESERVATION OF RIGHTS BY THE PLAINTIFFS........................................ 16

X.    COVENANT NOT TO SUE BY THE DEFENDANT........................................ 17

XI.   EFFECT OF SETTLEMENT .............................................................................. 18

XII.  NOTICES.............................................................................................................. 18

XIII. RETENTION OF JURISDICTION .................................................................... 20

XIV.  MODIFICATION ................................................................................................ 20

XV.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ...................... 21

XVI.  SIGNATORIES AND SERVICE........................................................................ 21

XVII. FINAL JUDGMENT .......................................................................................... 22

A.      WHEREAS, Plaintiffs, United States of America ("United States") and the State of

Montana ("State") have filed a joint complaint in this action, asserting claims under Section 1002

of the Oil Pollution Act, as amended ("OPA"), 33 U.S.C. § 2702, and also as to the State under

Section 75-10-715 of the Montana Comprehensive Environmental Cleanup and Responsibility Act

(CECRA), against Defendant Bridger Pipeline LLC. The complaint alleges that (i) on or about

January 17, 2015, Defendant discharged crude oil from its Poplar Pipeline into and upon the

Yellowstone River 6.5 miles upstream of Glendive, Montana, (ii) the Discharge resulted in injuries

to, destruction of, loss of, or loss of use of natural resources belonging to, managed by, held in

trust by, appertaining to, or otherwise controlled by the United States and the State, (iii) the United

States Department of the Interior ("DOI"), through the United States Fish and Wildlife Service

("USFWS") (referred to herein as the "Federal Trustee") and the State, through the Montana

Natural Resource Damage Program acting on behalf of the Governor ("State Trustee"), have

incurred unreimbursed Natural Resource Damage Assessment Costs as a result of the Discharge,

and (iv) Defendant is liable without limitation for natural resource damages for such injuries,

destruction and losses, including Natural Resource Damage Assessment Costs, under OPA and

CECRA.

B.      WHEREAS, the Environmental Protection Agency deployed an on-scene

coordinator to the spill location on January 19, 2015 to coordinate environmental assessment and

response activities by Defendant and federal, state and local officials.  The Defendant undertook

further cleanup actions pursuant to a February 8, 2017 Administrative Order on Consent, Docket

No. WQ-15-12, between the Montana Department of Environmental Quality and the Defendant.

Pursuant to the order and under MDEQ oversight, the Defendant surveyed oiled areas, conducted

required cleanup activities, and conducted environmental sampling of sediments, groundwater, surface water, and public water supply.

C.      WHEREAS, the Federal Trustee and State Trustee (collectively referred to herein as the "Trustees") are both trustees of Natural Resources that the Trustees contend are or were injured as a result of the Discharge, and previously entered into a memorandum of understanding providing a framework for coordinating assessment and restoration efforts. The Trustees collected ephemeral data related to fish tissue and water quality and evaluated data collected by EPA, MDEQ, Defendant, and Montana Fish, Wildlife, and Parks, and evaluated other information to develop potential restoration actions. Timely implementation of the restoration activities that this settlement makes possible will further benefit Natural Resources impacted by the Discharge.

D.      WHEREAS, Defendant has previously reimbursed the National Pollution Funds Center $280,081.92 for Natural Resource Damage Assessment Costs incurred by the Trustees.

E.      WHEREAS, by entering into this Consent Decree, Defendant does not admit the allegations in the complaint filed in this action.

F.      WHEREAS, the Parties agree that settlement of this matter without further litigation is in the public interest and that the entry of this Consent Decree is the most appropriate means of resolving this action.

G.      WHEREAS, the Parties agree, and by entering this Consent Decree the Court finds, that this Consent Decree: (1) has been negotiated by the Parties at arm's length, in good faith, (2) will avoid prolonged litigation among the Parties; and (3) is fair, reasonable, and furthers the objectives of OPA.

H.      The Defendant does not admit any liability arising out of the transactions or

4

occurrences alleged in this action.

NOW, THEREFORE, without adjudication of any issue of fact or law, except as provided in Section I (Jurisdiction) below, and with the consent of the Parties,

IT IS ADJUDGED, ORDERED AND DECREED as follows:

## I.   JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to Section 1017(b) of OPA, 33 U.S.C. § 2717(b), and 28 U.S.C. §§ 1331 and 1345, and over the Parties to this action for the purpose of entry and enforcement of this Consent Decree. This Court has pendent jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). Venue lies in the District of Montana pursuant to 33 U.S.C. § 2717(b) and 28 U.S.C. § 1391. Solely for the purposes of this Consent Decree or any action to enforce the Consent Decree, the Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. Defendant shall not challenge this Court's jurisdiction to enter and enforce this Consent Decree.

## II.   PARTIES BOUND

2.      The obligations of this Consent Decree apply to and are binding upon the Parties and each of their successors, assigns, or other entities or persons otherwise bound by law to comply with this Consent Decree. Any change in ownership or corporate status of the Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the Defendant's or its successors' and assigns' rights or responsibilities under this Consent Decree. Defendant shall not contest the right of any of the Plaintiffs to enforce the provisions of this Consent Decree.

## III.   DEFINITIONS

3.       Unless otherwise expressly provided herein, terms used in this Consent Decree

which are defined in OPA or in the regulations promulgated by NOAA under OPA, 15 C.F.R. Part

990, shall have the meaning assigned to them in OPA or in such regulations, as applicable.

Whenever the following terms are used in this Consent Decree and incorporated hereunder, the

definition specified hereinafter shall apply.

a.       "CECRA" shall mean the Montana Comprehensive Environmental Cleanup

and Responsibility Act, 75-10-701 et seq., Montana Code Annotated.

b.       "Consent Decree" shall mean this Consent Decree.

c.       "Day" shall mean a calendar day unless expressly stated to be a working

day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In

computing any period of time under this Consent Decree, where the last day would fall on a

Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next

Working Day.

d.       "Defendant" shall mean Bridger Pipeline LLC.

e.       "Discharge" shall mean the discharge of oil to the environment from

Defendant's Poplar oil transmission pipeline on or about January 17, 2015.

f.       "DOI" shall mean the United States Department of the Interior.

g.       "Federal Interest," as that term is used in Section VII (Stipulated Penalties)

of this Consent Decree, shall mean interest earned at the rate and by the method specified in 28

U.S.C. § 1961(a) and (b).

h.       "Federal Trustee" shall mean the Secretary of the United States Department

6

of the Interior, represented by USFWS, as the federal official designated to act on behalf of the public as trustee for natural resources under OPA Section 1006(b)(2), 33 U.S.C. § 2706(b)(2).

i.     "MDEQ Administrative Order on Consent" shall mean the February 8, 2017, Administrative Order on Consent between Defendant and the Montana Department of Environmental Quality entitled, "In the Matter of Violations of the Montana Water Quality Act by Bridger Pipeline LLC, and remedial Action under the Montana Comprehensive Environmental Cleanup and Responsibility Act at Poplar Pipeline, Glendive, Dawson County, Montana (FID #2405) Administrative Order on Consent," Docket No. 15-12.

j.     "Montana Natural Resource Damage Program" shall mean an entity within the Montana Department of Justice.

k.     "Natural Resources" shall mean land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States or any State or local government.

l.     "Natural Resource Damages" shall mean any damages recoverable by the United States or the State, as Trustees or *parens patriae* on behalf of the public, under Section 1002(b)(2) of OPA, or any other Federal law, State or local law under any theory without limitation, or common law, as compensation for injury to, destruction of, loss of, or loss of use of Natural Resources and natural resource services they provide, resulting from a release or threat of release of oil linked to the Discharge (including any injury, destruction or losses to Natural Resources from removal actions to address the Discharge). Natural Resource Damages include, without limitation: (i) the costs of restoration, rehabilitation, or replacement of injured or lost Natural Resources and natural resources services, or of acquisition of equivalent resources; (ii)

7

Natural Resource Damage Assessment Costs; (iii) the costs of planning and monitoring such restoration activities; and (iv) any other compensation for diminution in value or loss of use or non-use values; resulting from the Discharge.

        m.     "Natural Resource Damage Assessment Costs" shall mean, for purposes of this Consent Decree, all costs within the meaning of Sections 1002(b)(2)(A) and 1006(d)(1)(C) of OPA, 33 U.S.C. §§ 2702(b)(2)(A), 2706 (d)(1)(C), and Section 75-10-715(2)(b) of CECRA incurred by the Trustees resulting from the Discharge, including, but not limited to, direct, indirect, and administrative costs in assessing any injury to, destruction of, loss of, or loss of use of Natural Resources resulting from the Discharge, related restoration planning activities, and all costs directly or indirectly related to negotiating this Consent Decree.

        n.     "NRDAR Fund" shall mean DOI's Natural Resource Damage Assessment and Restoration Fund.

        o.     "OPA" shall mean the Oil Pollution Act of 1990, Pub. L. No. 101-380, 104 Stat. 484, 33 U.S.C. §§ 2701-2762.

        p.     "Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

        q.     "Parties" shall mean the Plaintiffs and the Defendant.

        r.     "Plaintiffs" shall mean the United States and the State of Montana.

        s.     "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

        t.     "State" shall mean the State of Montana.

        u.     "State Interest" as that term is used in Section VII (Stipulated Penalties) of

this Consent Decree, shall mean interest earned at the rate and by the method specified for judgments in Section 25-9-205, Montana Code Annotated.

v.     "State Trustee" shall mean the Governor of the State of Montana, designated to act on behalf of the public as trustee for natural resources under OPA §1006(b)(3), 33 U.S.C. § 2706(b)(3), represented by the Montana Natural Resource Damage Program.

w.     "Subparagraph" means a portion of this Consent Decree identified by a lower case letter or an arabic numeral in parentheses.

x.     "Trustees" shall mean the designated Federal Trustees and State Trustee.

y.     "United States" shall mean the United States of America, on behalf of the DOI, including USFWS, including all agencies, bureaus, administrations or departments of DOI and USFWS.

z.     "USFWS" shall mean the United States Fish and Wildlife Service.

aa.     "Yellowstone River 2015 Oil Spill Account" shall mean the State special revenue fund, established in accordance with Section 17-2-102(1)(b)(i), MCA. No portion of the amounts deposited into this account under this Consent Decree, or any interest or earnings thereon, is to be treated as State General Fund money, nor is any portion to be converted or transferred to the State General Fund or any other fund. The funds in this account shall be used solely to restore, replace, rehabilitate, or acquire the equivalent of the natural resources Trustees contend were injured or lost as a result of the Discharge, as outlined herein.

## IV.     GENERAL PROVISIONS

4.     The mutual objectives of the Parties in entering into this Consent Decree are (i) to provide for restoration, rehabilitation, replacement, or acquisition of the equivalent of the

Natural Resources that the Trustees contend are or were injured, destroyed, or lost as a result of the Discharge and subsequent removal actions to address the Discharge, including restoration, rehabilitation or replacement of lost natural resource services; (ii) to provide for payment of unreimbursed Natural Resource Damage Assessment Costs incurred by Trustees; (iii) to resolve the Defendant's liability for Natural Resource Damages as provided herein; and (iv) to avoid potentially costly and time-consuming litigation. This Consent Decree is unique to the site-specific circumstances related to the Discharge and is not precedent for any other Consent Decree.

5.      The Effective Date of this Consent Decree shall be the date that this District Court enters the Consent Decree.

## V.    NATURAL RESOURCE DAMAGE PAYMENT BY DEFENDANT

6.      Not later than thirty (30) Days after the Effective Date of this Consent Decree, the Defendant shall pay a total of $2,000,000.00 to the Trustees as set forth below.

7.      The sum of $260,205.00 shall be paid to the United States to be used by the Federal Trustee for the purposes set forth in Section VI (Trustees' Management and Application of the Settlement). The payment required by this Paragraph shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to the Defendant by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Montana following entry of this Consent Decree by this Court. At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, to the United States in accordance with Section XII of this Consent Decree (Notices) and to the U.S. Department of the Interior, NRDAR Program, Attn: Fund Restoration Manager, 1849 C Street NW, Mailstop 4449, Washington, DC 20240. The

transmittal letter shall state that the payment is for Natural Resource Damages in *United States v. Bridger Pipeline LLC*, and shall reference the civil action number, DOJ Case Number 90-5-1-1-11262/1. Any payments received by the Department of Justice after 4:00 pm Eastern Standard Time shall be credited on the next business Day.

8.     Defendant shall pay the sum of $1,739,795.00 to the State to be used by the State Trustee for the purposes set forth in Section VI (Trustees' Management and Application of the Settlement). All payments made to the State pursuant to the Consent Decree, including any State Interest, shall be made by the Defendant to the State by electronic funds transfer in accordance with instructions to be provided by the State. Defendant shall contact the Fiscal Bureau Chief of the Central Services Division of the Montana Department of Justice at least 48 hours prior to initiating a transfer to provide notice of the date, time, and amount of the expected transfer and to confirm the wiring instructions, bank routing, and account numbers. If the Fiscal Bureau Chief of the Montana Department of Justice is unavailable, the Defendant shall contact NRDP representatives identified in Section XII (Notices). The State shall deposit the payment received, and any subsequent interest and earnings, into the Yellowstone River 2015 Oil Spill Account. This account shall be operated and maintained by the State as set forth in this Consent Decree. No portion of the amounts deposited under this Consent Decree, or any interest or earnings thereon, is to be treated as State General Fund money, nor is any portion to be converted or transferred to the State General Fund or any other fund. The monies paid to the State, and the interest and earnings thereon, shall be available only for the respective purposes described for the established account and for no other purpose. Any payments received by the State after 4:00 pm Mountain Standard Time shall be credited on the next business Day.

## VI.    TRUSTEES' MANAGEMENT AND APPLICATION OF THE SETTLEMENT

9.      The United States shall deposit $260,205.00 received from Defendant into a distinct account within the NRDAR Fund. The Federal Trustee shall use the principal amount and any interest or investment return accrued on the specific account to restore, replace, rehabilitate, or acquire the equivalent of the natural resources Trustees contend were injured or lost as a result of the Discharge, including, but not limited to, planning, design, implementation, oversight, any operation and maintenance, monitoring, permitting (as necessary), NEPA analysis, and other requirements related to such activities, and to reimburse the Federal Trustee for their Natural Resource Damage Assessment Costs. The Federal Trustee shall not make any charge against this account for investment or management services.

10.     The total natural resource damage payment to be paid by the Defendant to the State pursuant to Paragraph 8 shall be managed by the State as follows. The State has established the Yellowstone River 2015 Oil Spill Account. The State Trustee shall use the principal amount and any interest or investment return on the Yellowstone River 2015 Oil Spill Account to restore, replace, rehabilitate, or acquire the equivalent of the natural resources Trustees contend were injured or lost as a result of the Discharge, including, but not limited to, planning, design, implementation, oversight, any operation and maintenance, monitoring, permitting (as necessary), NEPA/MEPA analysis, and other requirements related to such activities, and to reimburse the State for its Natural Resource Damage Assessment Costs, including costs paid out of any internal accounts. The State Trustee shall not make any charge against this account for investment or management services.

11.     The allocation of funds for specific projects or categories of projects will be

12

contained in the Restoration Plan to be prepared jointly by the Trustees, for which public notice, opportunity for public input, and consideration of public comment will be provided. The Trustees will jointly direct expenditure of the funds consistent with the Restoration Plan and the Trustees' memorandum of understanding regarding the coordination and implementation of Natural Resource Damage Assessment activities. The Trustees jointly retain the ultimate authority and responsibility to use the Settlement Amount to restore Natural Resources in accordance with applicable law, this Consent Decree, and any memorandum or other agreement between them.

## VII.    STIPULATED PENALTIES

12.    Assessment of Stipulated Penalties. For each failure to make any payment required under Paragraphs 6, 7, and 8 when due, Defendant shall pay a stipulated penalty as provided below in this Section VII.

13.    Stipulated penalties shall accrue at a rate of two thousand dollars ($2,000) per day for each of the first thirty (30) days that a payment is late, and at the rate of five thousand dollars ($5,000) per day for each additional day that a payment is late. Stipulated penalties shall begin to accrue on the day after a required payment is due, and such penalties shall continue to accrue until the date on which the required payment is received. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.  In the case of late payments due under Paragraph 6, above, one-half of the accrued stipulated penalties, together with any Federal Interest thereon under Paragraph 16 shall be paid to the United States in the manner specified in Paragraph 17.a, one-half of the accrued penalties, together with any State Interest thereon under Paragraph 16, shall be paid to the State in the manner specified in Paragraph 17.b.

14.    Notice and Demand. In the event of a failure to make a timely payment required

13

under Paragraphs 7 or 8 above, either Plaintiff may provide Defendant with a written notice of noncompliance and a demand for payment of stipulated penalties, in the manner specified in Section XII of this Consent Decree (Notices). In the case of any failure to make a timely payment required under Paragraphs 7 or 8, the Party entitled to receive the payment may provide Defendant with a written notice of noncompliance and a demand for stipulated penalties, in the manner specified in Section XII of this Consent Decree (Notices). However, stipulated penalties for any violation of Paragraphs 6, 7, or 8, above, shall accrue as provided in Paragraph 13, above, regardless of whether the Defendant has been notified of a violation.

15.     Defendant shall pay stipulated penalties as provided below in this Section VII within thirty (30) days of receipt of written demand for such stipulated penalties.

16.     Interest. If the Defendant fails to pay any stipulated penalties when due, Defendant shall pay interest on the unpaid balance of any stipulated penalties due, of which one-half of the accrued interest, shall be paid to the United States as Federal Interest in the manner specified in Paragraph 17.a, and one-half of the accrued interest, shall be paid to the State as State Interest in the manner specified in Paragraph 17.b. Such interest shall begin to accrue on the date thirty (30) days past the demand therefor.

17.     Payment Instructions. All stipulated penalty and interest payments due under this Section VII shall be accompanied by a reference to this Consent Decree, be identified as "Stipulated Penalties," and reference "Yellowstone River January 2015 Oil Spill." Notice of payment of a stipulated penalty shall be made to the appropriate Trustees in the manner specified in Section XII (Notices).

a.     Defendant shall pay any stipulated penalties and Federal Interest due to the

14

United States pursuant to this Section VII by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Montana. At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for stipulated penalties owed pursuant to the Consent Decree, and shall reference the case name, civil action number, DOJ Case Number 90-5-1-1-11262/1, and the violations for which the stipulated penalties are being paid to the United States, in accordance with Section XII of this Decree (Notices).

    b.  Defendant shall pay any stipulated penalties and any related State Interest to the State by electronic funds transfer in accordance with instructions to be provided by the State. Such funds shall be deposited by the State in a general restoration account for assessment activities.

   18.  Notwithstanding any other provision of this Section, any Party entitled to a payment under Paragraphs 6, 7 or 8, may, in its unreviewable discretion, waive any portion of the stipulated penalties due to the Party that have accrued pursuant to this Consent Decree, as well as any related portion of the interest that has accrued thereon.

   19.  Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or the State to seek any other remedies or sanctions available by virtue of Defendant's violation of this Consent Decree or of the statutes and regulations upon which it is based.

    **VIII.   COVENANTS NOT TO SUE BY PLAINTIFFS**

   20.  Except as provided in Section IX (Reservation of Rights by Plaintiffs), below, in consideration of the payments that will be made by Defendant under this Consent Decree, the

United States and the State covenant not to sue or take administrative action against the Defendant for Natural Resource Damages. The covenants not to sue set forth in this Paragraph extend only to the Defendant and do not extend to any other person.

21.     The covenants not to sue in Paragraph 20, above, are conditioned upon receipt of all payments required by Section V (Natural Resource Damage Payment by Defendant) and, as applicable, Section VII (Stipulated Penalties) of this Consent Decree.

## IX.    RESERVATION OF RIGHTS BY THE PLAINTIFFS

22.     General Reservation of Rights.   Notwithstanding any other provision of this Consent Decree, Plaintiffs reserve, and this Consent Decree is without prejudice to, all rights against Defendant with respect to all matters other than those expressly specified in the covenants not to sue set forth in Paragraph 20, including without limitation the following:

      a.     Claims based on a failure of Defendant to meet a requirement of this Consent Decree;

      b.     Claims to seek or obtain relief other than for Natural Resource Damages;

      c.     As to the United States, claims for civil penalties or injunctive relief relating to the Discharge, including claims under 33 U.S.C. §§ 1319 or 1321;

      d.     As to the United States, claims under 33 U.S.C. § 2702(a) and (b)(1)(A) for removal costs relating to the Discharge;

      e.     As to the United States, claims under 49 U.S.C. 60101 *et seq*.;

      f.     Claims based on violations of State or Federal law that occur after the date of lodging of this Consent Decree;

      g.     Claims for criminal liability; and

16

h.      As to the State, claims against Defendant to the extent that such claims were reserved as specified in Section XXIV of the MDEQ Administrative Order on Consent, except claims for past or future Natural Resource Damages. The State's reservation of claims for Natural Resource Damages in the MDEQ Administrative Order on Consent are subject to and extinguished by Section VII (Covenants Not to Sue by Plaintiffs) of this Consent Decree. Except as provided in this Subparagraph 22.g, nothing in this Consent Decree shall be construed in any way to limit or affect any provision in or any obligation of Settling Defendant under the MDEQ Administrative Order on Consent.

## X.      COVENANT NOT TO SUE BY THE DEFENDANT

23.      Defendant hereby covenants not to sue and agrees not to assert or maintain any claims or causes of action against the United States or the State or their respective officials, employees, agents, contractors, departments, agencies, administrations and bureaus, related to Natural Resource Damages resulting from the Discharge, including but not limited to any direct or indirect claim under OPA §§ 1007, 1008, 1012, 1013 or 1015(a), 33 U.S.C. §§ 2707, 2708, 2712, 2713, 2715(a), the Environmental Quality Protection Fund (established pursuant to Section 75-10-704, Montana Code Annotated), or the Orphan Share Account (established pursuant to Section 75-10-743, Montana Code Annotated). Defendant hereby covenants and agrees not to assert or maintain, any claims against the Oil Spill Liability Trust Fund relating to any Natural Resource Damages resulting from the Discharge, or any claims for recovery of any costs incurred by Defendant pursuant to this Consent Decree.

24.      Defendant hereby releases claims reserved under Paragraph 77 of the MDEQ Administrative Order on Consent.

17

## XI.    EFFECT OF SETTLEMENT

25.      Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.

26.      In any subsequent administrative or judicial proceeding initiated by the United States or the State relating to the Discharge, the Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; *provided, however*, that nothing in this Paragraph affects the enforceability of the Covenant Not To Sue, as set forth in Section VIII.

27.      Nothing in this Consent Decree shall establish or be construed to establish any liability on the part of Defendant, or be used as evidence of any such liability on the part of the Defendant, in connection with any claims, including other claims arising from the Discharge.

## XII.    NOTICES

28.      Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States and the State, and the Defendant, respectively.

As to the United States:

18

As to the Department of Justice:

Chief, Environmental Enforcement Section Environment and Natural Resources Division
U.S. Department of Justice (DJ # 90-5-1-1-11262/1)
P.O. Box 7611
Washington, D.C. 20044-7611
(for U.S. Mail)
150 M Street, N.E. – Suite 2.900
Washington, DC 20002
(for overnight delivery)

As to DOI:
Jacob Martin
U.S. Fish and Wildlife Service
Montana Ecological Services Office
585 Shepard Way, Suite 1
Helena, MT 59601
Phone 406.449.5225 X215
jacob_martin@fws.gov

Ann C. Umphres Attorney-Advisor
U.S. Department of the Interior
Office of the Solicitor, Rocky Mtn. Region 755 Parfet St., Suite 151
Lakewood, CO 80215
TEL: 303-445-0636
ann.umphres@sol.doi.gov


As to the State:

Harley R. Harris Lawyer/Program Manager
harleyharris@mt.gov

and

Douglas H. Martin Restoration Program Chief
Attn: Yellowstone River January 2015 Oil Spill Natural Resource Damage Program Montana
Department of Justice
1720-9th Avenue
P.O. Box 201425 Helena, MT 59620-1425
dougmartin@mt.gov

19

As to Defendant:

Kevin C. Cook
General Counsel
P.O. Box 2360
Casper, WY 82602-2360
Kevin.Cook@Truecos.com
307-266-0318

Ken Dockweiler
Director, Land, Government and Compliance
P.O Box 2360
Casper, WY 82602-2360
Ken.dockweiler@truecos.com
307-266-0275

## XIII.   RETENTION OF JURISDICTION

29.     The Court shall retain jurisdiction to modify and enforce the terms and conditions of this Consent Decree and to resolve disputes arising hereunder as may be necessary or appropriate for the construction or execution of this Consent Decree.

## XIV.   MODIFICATION

30.     Any material modification of this Consent Decree shall be made only by written agreement of the Parties and shall take effect only upon approval by the Court. Any non-material modification of this Consent Decree shall be made by written agreement of the Parties, and shall not take effect until filed with the Court. Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this Consent Decree.

31.     The provisions of this Consent Decree are not severable. The Parties' consent hereto is conditioned upon the entry of the Consent Decree in its entirety without modification, addition, or deletion except as agreed to by the Parties.

32.     Economic hardship or changed financial circumstances of a Defendant shall not

20

serve as a basis for modification of this Consent Decree.

## XV.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

33.     This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment. The United States and the State each reserve the right to withdraw or withhold consent if comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate. The Defendant consents to the entry of this Consent Decree without further notice. If for any reason the Court should decline to approve this Consent Decree in the form presented, or if approval and entry is subsequently vacated on appeal of such approval and entry, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XVI.   SIGNATORIES AND SERVICE

34.     The undersigned representatives of the Defendant, the United States, and the State each certify that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document. This Consent Decree may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, taken together, shall constitute one and the same instrument.

35.     The Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States or the State has notified the Defendant in writing that it no longer supports entry of the Consent Decree.

36.     Defendant shall identify, on the attached signature pages, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of

the Defendant with respect to all matters arising under or relating to this Consent Decree. Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to service of a summons. The Parties agree that the Defendant needs not file answers to the complaint in this action unless or until: (i) the United States or the State has notified Defendant in writing that it no longer supports entry of this Consent Decree; or (ii) the Court expressly declines to enter this Consent Decree.

## XVII. FINAL JUDGMENT

37. This Consent Decree constitutes the final, complete, and exclusive understanding among the Parties with respect to the settlement embodied in the Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

38. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State, and the Defendant. The Court finds that there is no reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 58.

SO ORDERED THIS 13th DAY OF January, 2022.

Susan P. Watters
UNITED STATES DISTRICT COURT JUDGE

22

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States, *et al.* v. Bridger Pipeline LLC, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.


FOR THE UNITED STATES OF AMERICA:




Date: 9/29/21

_____
*Nathaniel Douglas*
NATHANIEL DOUGLAS
Deputy Section Chief
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice




Date: September 30, 2021

_____
*John Sither*
JOHN SITHER
Senior Counsel
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611



23

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States, *et al.* v. Bridger Pipeline LLC, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR THE UNITED STATES OF AMERICA:


Date: _____10/4/21_____

LEIF M. JOHNSON
Acting United States Attorney
U.S. Attorney's Office - District of Montana
316 N 26th St #5018
Billings, MT 59101


Date: _____9-30-2021_____

MARK S. SMITH
Senior Litigation Counsel
U.S. Attorney's Office - District of Montana
316 N 26th St #5018
Billings, MT 59101

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States, *et al*. v. Bridger Pipeline LLC, subject to the public notice and comment requirements of 28 C.F.R. § 50.7 and Section 75-10-713, MCA.

FOR THE STATE OF MONTANA:

Date: _____10/7/21_____

GREG GIANFORTE
Governor of the State of Montana

_____ Date:_____
AUSTIN KNUDSEN
Montana Attorney General

_____ Date: Sept 24 2021
HARLEY HARRIS
Supervising Assistant Attorney General/Program Manager
KATHERINE M. HAUSRATH
Assistant Attorney General
Montana Natural Resource Damage Program
P.O. Box 201425 1720 Ninth Avenue
Helena, Montana 59620-1425

25

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States, *et al*. v. Bridger Pipeline LLC, subject to the public notice and comment requirements of 28 C.F.R. § 50.7 and Section 75-10-713, MCA.

FOR THE STATE OF MONTANA:

_____     Date: _____
GREG GIANFORTE
Governor of the State of Montana

_____     Date: 9/27/2021
AUSTIN KNUDSEN
Montana Attorney General

_____     Date:_____
HARLEY HARRIS
Supervising Assistant Attorney General/Program Manager
KATHERINE M. HAUSRATH
Assistant Attorney General
Montana Natural Resource Damage Program
P.O. Box 201425 1720 Ninth Avenue
Helena, Montana 59620-1425

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States, *et al.* v. Bridger Pipeline LLC, subject to the public notice and comment requirements of 28 C.F.R. § 50.7 and § 75-10-713, MCA.


FOR BRIDGER PIPELINE LLC


_____     Date: _August 30, 2021_

H.A. True III
Member, Bridger Pipeline LLC


_____     Date: _AUGUST 30, 2021_

Kevin C. Cook
General Counsel

26